UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DATATERN, INC.<br><br>Plaintiff,<br><br>v.<br><br>BLAZENT, INC., MICROSTRATEGY INC.,<br>CARL WARREN AND COMPANY<br>INCORPORATED, LANCET SOFTWARE<br>DEVELOPMENT, INC., AIRLINES<br>REPORTING CORP., MAGIC SOFTWARE<br>ENTERPRISES LTD., MAGIC SOFTWARE<br>ENTERPRISES, INC., TERADATA<br>CORPORATION, INFORMATICA<br>CORPORATION, EPICOR SOFTWARE<br>CORPORATION, and PREMIER, INC.<br><br>Defendants. | 1:11-cv-11970-FDS<br><br>(Consolidated) |

**MICROSTRATEGY'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY FOR UNPATENTABLE SUBJECT MATTER**

## TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     ABSTRACT IDEAS AND MENTAL STEPS IMPLEMENTED IN SOFTWARE
        ARE NOT PATENT ELIGIBLE, REGARDLESS OF WHETHER THEY
        COVER BUSINESS METHODS. ......................................................................2

        A.    Precedent Does Not Require a Comparison of the Challenged Claims
              to *Bilski*. ................................................................................................2

        B.    *Alice* Is Not Limited to Claims Related to Commercial Practice ...................3

        C.    Abstract Ideas Implemented in Software or Through a Computer Are
              Not Patent Eligible. ..................................................................................5

        D.    DataTern's Reliance on *DDR Holding* Is Misplaced. ...................................7

III.    DATATERN'S PATENT IS A CONVENTIONAL APPLICATION OF
        ABSTRACT IDEAS. ..........................................................................................7

        A.    The Claimed Steps Cover Abstract Ideas. ........................................................8

        B.    The Claimed Steps Are Not Inventive Because They Implicate
              Conventional Technology. ...........................................................................8

              1. Interface Objects Are Conventional Components Pre-Dating the
                 Patent. ..................................................................................................9

              2. Runtime Engines Are Conventional Components Pre-Dating the
                 Patent. ................................................................................................10

              3. Use of Conventional Components Pre-Dating the Patent Does Not
                 Make an Abstract Idea Patentable. .............................................................11

IV.     NO PRESUMPTION OF VALIDITY APPLIES. ..............................................12

V.      THE COURT DOES NOT OWE ANY DEFERENCE TO THE USPTO. ............13

        A.    The USPTO's § 101 Inquiry During Prosecution Occurred Under a
              Now-Rejected Standard. .............................................................................13

        B.    DataTern Mistakes Novelty for Patentability Under § 101 ............................14

VI.     CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)..................................................................2

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  2014 WL 5430956 (E.D. Va. Oct. 24, 2014) ...........................................5

*Bascom Research, LLC v. LinkedIn, Inc.*,
  2015 WL 149480 (N.D. Cal. Jan. 5, 2015) ...............................................5

*In re BRCA1- and BRCA2-Based Hereditary Cancer Test Patent Lit.*,
  774 F.3d 755 (Fed. Cir. 2014)...............................................................2, 13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)..........................................................2, 6, 12

*Cooper Techs. Co. v. Dudas*,
  536 F.3d 1330 (Fed. Cir. 2008)..................................................................6

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
  558 F. App'x 988 (Fed. Cir. 2014) ...........................................................6

*DataTern v. Staples*,
  Case No. 2:10-cv-133-TJW-CE.................................................................11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)..................................................................7

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014)..............................................................2, 5

*Essociate, Inc. v. Clickbooth.com, LLC*,
  2015 WL 1428919 (C.D. Cal., Feb. 11, 2015)..........................................8

*I/P Engine, Inc. v. AOL, Inc.*,
  576 Fed. App'x. 992 (Fed. Cir. 2014).......................................................6

*Intellectual Ventures II LLC v. JP Morgan Chase & Co. et al*,
  1-13-cv-03777 (S.D.N.Y. Apr. 28, 2015, Order)......................................4

*Intellectual Ventures II LLC v. JPMorgan Chase & Co.*,
  781 F.3d 1372 (Fed. Cir. 2015)..................................................................6

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
    566 U.S. __, 132 S. Ct. 1289 (2012)..................................................................3, 8

*Microsoft Corp. v. DataTern, Inc.*,
    2012 WL 3682915 (S.D.N.Y. Aug. 24, 2012)..................................................9, 11

*Modern Telecom Sys. LLC v. Earthlink, Inc.*,
    2015 WL 1239992 (C.D. Cal. Mar. 17, 2015).......................................................13

*Open Text S.A. v. Box, Inc.*,
    2015 WL 269036 (N.D. Cal. Jan. 20, 2015)...........................................................5

*OpenTV, Inc. v. Apple, Inc.*,
    2015 WL 1535328 (N.D. Cal. Apr. 6, 2015).........................................................13

*Progressive Cas. Ins. Co. v. Safeco Ins. Co.*,
    No. 1:10 CV 1370, 2010 WL 4698576 (N.D. Ohio Nov. 12, 2010) ......................12

*Shortridge v. Found. Constr. Payroll Serv., LLC*,
    2015 WL 1739256 (N.D. Cal. Apr. 14, 2015).......................................................13

*Ultramercial, Inc. v. Hulu, LLC*,
    722 F.3d 1335 (Fed. Cir. 2013)..............................................................................3

*Ultramercial, Inc. v. Hulu*,
    LLC, 772 F.3d 709 (Fed. Cir. 2014) ............................................................ *passim*

*Ultramercial, LLC v. Hulu, LLC*,
    657 F.3d 1323 (Fed. Cir. 2011)..............................................................................3

*WildTangent, Inc. v. Ultramercial, LLC*,
    132 S. Ct. 2431 (2012)...........................................................................................3

I.      **Introduction**

Last June, the Supreme Court's *Alice* decision conclusively ruled that abstract ideas

cloaked in computer parlance are not patent-eligible. Since then, the Federal Circuit and district

courts around the country have applied this decision early in a litigation to dispose of overbroad

patents, such as the one here, that have enabled patent-assertion entities like DataTern to assess

an unfair tax on the industry. This Court should wield the salutary tool provided by *Alice* and its

progeny, and end DataTern's extortion campaign against MicroStrategy and its customers.

Like the patent that the Federal Circuit recently invalidated in *Ultramercial*, DataTern's

patent implicates mental steps implemented using conventional components already well-known

in the prior art. Indeed, DataTern does not deny that "selecting an object model" and "generating

a map" can be satisfied by mental processes. In other words, DataTern's claims do not pass *Alice*

step one. The recitation of an "interface object" and "runtime engine"—implemented on a

generic computer—do not save DataTern's patent, because the claims merely use conventional

computer concepts to carry out the claimed mental processes. The claims thus lack "significantly

more" than the recited mental steps, and therefore fail to recite a patentable invention under *Alice*

step two.

With the facts and the law against it, DataTern attempts to cabin *Alice* and its progeny to

so-called business method patents directed at "age-old commercial practices." But this argument

ignores the overwhelming weight of precedent in which the appellate court and many district

court decisions have invalidated patents that—like DataTern's—fundamentally claim an abstract

mental process and add nothing more than conventional techniques to implement that process on

a computer. Like these other technology-related patents invalidated in *Alice's* wake, DataTern's

claims fail to pass muster under § 101 because they merely computerize the abstract idea of

mapping between an object-oriented program and a relational database. This Court should reject

DataTern's misleading arguments and grant MicroStrategy's motion for summary judgment.

## II.     Abstract Ideas and Mental Steps Implemented in Software Are Not Patent Eligible, Regardless of Whether They Cover Business Methods.

Facing hostile precedent, DataTern tries to cabin *Alice* and its progeny, by suggesting that

the proper inquiry requires a comparison of the challenged claims to those in *Bilski*, Opp. at 9–

11, and by contending that *Alice* disapproves only of patents directed to "age-old commercial

practices" while "improvements to computer technology" satisfy § 101 (*id.* at 11-17.) DataTern's

resort to *Bilski* and undue focus on business method patents are misleading.

### A.     Precedent Does Not Require a Comparison of the Challenged Claims to *Bilski.*

Seizing on the Supreme Court's decision not to define "abstract idea," DataTern argues

that "a reliable way to determine whether a claim is drawn to an abstract idea is to compare it to

the claims from *Bilski*, which were abstract." (Opp. at 10.) DataTern misrepresents the law.[1] The

Federal Circuit has repeatedly invalidated claims that—unlike in *Bilski*—implement computer

technology. *E.g., Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d

1344, 1350-52 (Fed. Cir. 2014); *Content Extraction & Transmission LLC v. Wells Fargo Bank,*

*Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *Accenture Global Servs., GmbH v. Guidewire*

---

[1] A simple examination of post-*Alice* precedent debunks DataTern's argument that the "reliable" way to determine validity is to compare challenged claims with *Bilski*. For example, in its July 2014 opinion in *Digitech*, the Federal Circuit scrutinized the challenged method claims without comparing them to those in *Bilski*. *Id.* (affirming ruling of invalidity under § 101). In fact, the *Digitech* opinion does not even cite *Bilski*. *See generally id.* As another example, in agreeing with the district court's invalidity decision under § 101, another panel of the Federal Circuit reviewed the challenged claims, including a number of method claims, under the *Alice* framework without mentioning or even citing *Bilski*. *In re BRCA1- and BRCA2-Based Hereditary Cancer Test Patent Lit.*, 774 F.3d 755, 759–64 (Fed. Cir. 2014).

*Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013). These examples suffice to refute

DataTern's unduly narrow—and incorrect—legal standard.

## B.    *Alice* Is Not Limited to Claims Related to Commercial Practice.

DataTern is also incorrect that *Alice* and its progeny were meant to invalidate only claims

directed to "long-standing commercial practices that were previously performed in the brick-and-

mortar world." (Opp. at 11, 16–17.) While many claims held invalid under § 101 concerned

business/financial methods, the courts have also found that numerous non-business method

claims fail to pass muster under *Alice*.

The *Ultramercial* case is instructive. *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 712

(Fed. Cir. 2014).[2] *Ultramercial* involved a patent concerned with distributing copyrighted

content over the Internet. In other words, the Internet-related patent went beyond existing

commercial practices previously used in the brick-and-mortar world. Indeed, the claimed method

in *Ultramercial* recited an eleven-step process for restricting access to certain online content,

requiring that a user receive and potentially interact with a "sponsor message" before allowing

the delivery of the protected content. Like DataTern, the *Ultramercial* patentee argued that its

claims were "not directed to the type of abstract idea at issue in *Alice* zone that was 'routine,'

---

[2] The *Ultramercial* case has a complex procedural history. In 2011, the Federal Circuit initially found these claims patent-eligible because, *inter alia*, the claims required "controlled interaction with a consumer via an Internet website, something far removed from purely *mental* steps." *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1330 (Fed. Cir. 2011) (emphasis in original). The Supreme Court vacated that opinion in light of *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. __, 132 S. Ct. 1289 (2012). *WildTangent, Inc. v. Ultramercial, LLC*, 132 S. Ct. 2431 (2012). On remand, the Federal Circuit once more found the claims patent-eligible because they were limited to a practical application and represented "an improvement over the prior art." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1354 (Fed. Cir. 2013). After handing down its decision in *Alice*, the Supreme Court again vacated and remanded the Federal Circuit's *Ultramercial* decision. On remand, the Federal Circuit issued its final opinion in the case, holding that all asserted claims were not patent-eligible. *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 712 (Fed. Cir. 2014).

'long prevalent,' or 'conventional,'" and were "instead, directed to a specific method of advertising and content distribution that was previously unknown and never employed on the Internet before." *Id.* at 714. The Federal Circuit disagreed because, under the *Alice* framework, (1) the claims were directed to the abstract idea of displaying an advertisement in exchange for access to copyrighted material, and (2) the eleven-step process recited in the claims was not "significantly more" than a description of the abstract method. *Id.* at 714. Although both the alleged problem and claimed solution were unique to computer technology and the Internet, the Federal Circuit nonetheless held the *Ultramercial* claims unpatentable.

Following *Alice* and Federal Circuit precedents, many district courts have similarly invalidated patent claims under § 101, although these claims had nothing to do with "age-old commercial practices." For example, the court in *Intellectual Ventures II LLC v. JP Morgan Chase & Co. et al*, 1-13-cv-03777 (S.D.N.Y. Apr. 28, 2015, Order) (attached as Ex. A), recently found invalid all three patents at issue: (1) "a process for filtering packetized information received by a network's firewall" using "access rules"; (2) "a method that permits an owner or distributor to control access to, and use of, digital property after primary distribution to an authorized user"; and (3) "a method for monitoring multiple computer hosts within a network for anomalies." *Id*. at 2-6. Like DataTern, the patentee argued that "any method solving a problem peculiar to a technological context is patent-eligible." *Id.*at 18. Citing *Alice*, the court rejected this argument: "All software patents, whether drawn to an abstract idea or not, require implementation by way of a computer program. [The patentee's] argument would result in the validation of all software patents, whether drawn to an abstract idea or not. This it cannot do." *Id.* at 22.

*Open Text S.A. v. Box, Inc.*, 2015 WL 269036 (N.D. Cal. Jan. 20, 2015) similarly

involved network technology, in particular the claims recited a collaborative system including

network elements such as server, web browser, computer memory, and a messaging system.

Although the claim related to computer technology, the court still found that the claims were

directed to an unpatentable abstract idea. *Id.* at *3 ("It may be, as Open Text insists, that this idea

was new at the time of invention, but it is still an abstract idea, and therefore meets the first part

of the *Mayo/Alice* test."). Moreover, none of the specific technical implementation details recited

in the claim were sufficient to meet the requirement that a patentee add "significantly more" than

an abstract idea to satisfy eligibility requirements. *Id. See also Bascom Research, LLC v.*

*LinkedIn, Inc.*, 2015 WL 149480, at *7 (N.D. Cal. Jan. 5, 2015) (finding patent concerning a

method for creating "link directories for storing link relationships between document objects

located on the network" invalid as abstract); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 2014

WL 5430956, at *6 (E.D. Va. Oct. 24, 2014) (finding invalid under *Alice* a claim directed to

software for tracking usage of computer network services).

### C.   Abstract Ideas Implemented in Software or Through a Computer Are Not Patent Eligible.

DataTern further suggests that abstract ideas implemented in computer technology are

patentable. (Opp. 11–17.) While a claimed invention may solve a problem that exists only

because of computers, it may still be too abstract to be patent-eligible.

The Federal Circuit's ruling in *Digitech* illustrates this important point by invalidating a

purely computer-related patent under *Alice. Digitech*, 758 F.3d at 1347. Specifically, the

*Digitech* claims covered an "improved device profile" that described spatial and color properties

of a device within a digital image processing system implemented through computers. Yet the

Federal Circuit affirmed the district court's decision that the claims were invalid as abstract. *Id.*

The *Digitech* opinion is not an aberration, but rather a judicial trend rejecting abstract ideas cloaked under the guise of computer implementation.[3] *See, e.g., Content Extraction*, 776 F.3d at 1347 (invalidating claims directed to extracting data from hardcopy documents using a scanner, and then processing and storing information); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding that claims directed to "exploded data transactions" in telecommunications networks were patent-ineligible abstract ideas).

Notably, the very opinion on which DataTern heavily relies to support its "directed to technological solutions" argument—Judge Mayer's concurrence in *I/P Engine, Inc. v. AOL, Inc*., 576 Fed. App'x. 992, 994-995 (Fed. Cir. 2014)—contradicts its position. (Opp. at 12.) Although the patents in *I/P Engine* covered improvements in computer search engine technology, Judge Mayer's concurrence concluded that the patents did "not pass muster under section 101."[4] *Id.* at 994. Even under a "technological arts" inquiry, it was not enough that the problem and solution addressed by the patents-at-issue in *I/P Engine* pertained to computers and the Internet. Like the claims at issue here, the *I/P Engine* claims merely implemented well-known concepts on a computer and thus were invalid.[5]

---

[3] Indeed, since *Alice*, every Federal Circuit opinion save one (*DDR Holdings*) has invalidated claims challenged under § 101. And a review of district court decisions suggests that the summary judgment grant rate on this issue has nearly doubled post-*Alice* (from approximately 37% up to 66%).

[4] The § 101 discussion in *I/P Engine* appears only in Judge Mayer's concurrence, as the court's *per curiam* opinion only addressed the validity of the patent under § 103.

[5] DataTern attempts to buttress its position by pointing to the USPTO's post-*Alice* guidance regarding computer-implemented invention. (Opp. at 15–16.) But courts do not defer to the USPTO on substantive issues. *See Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1335–36 (Fed. Cir. 2008) (explaining that the PTO is authorized to establish "procedural" rules, but it cannot establish a "substantive" rule that "'effects a change in existing law or policy' which 'affect[s] individual rights and obligations.'"); *see also Intellectual Ventures II LLC v. JPMorgan Chase & Co.,* 781 F.3d 1372, 1378 (Fed. Cir. 2015) (refusing to give deference to USPTO's interpretation affecting appellate jurisdiction).

Thus, implementing an abstract idea using computer technology does not transform this abstraction into patent-eligible subject matter.

> **D.      DataTern's Reliance on *DDR Holding* Is Misplaced.**

DataTern tries to analogize its claims to those in *DDR Holdings*. (Opp. at 17.) This analogy is not apt. In contrast to the present facts, *DDR Holdings* did not involve any contention that any steps of the claims could be performed as a mental step. To the contrary, the *DDR Holdings* claims recited a technical method for assembling a "composite web page" based on information pulled from a "data store." After acknowledging that it "is clear today that not all machine implementations are created equal," the Federal Circuit noted the challenger's difficulty in satisfying *Alice*'s step one to articulate the "abstract idea" at issue. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Here, DataTern has conceded that "selecting an object model" and "generating a map" could be performed as mental steps, and does not deny that the abstract idea embodied in its claim is to interface between an object-oriented program and a relational database. *DDR Holdings* is thus inapposite.

## III.    DataTern's Patent Is a Conventional Application of Abstract Ideas.

Courts applying *Alice* have held invalid a broad swath of abstract software patents, including patents directed at technology that can only exist on a computer. As discussed above, it is irrelevant that this case does not implicate a business method. The key question under *Alice* is whether the DataTern claims are directed to an abstract idea, and, if so, whether individual limitations add "significantly more" than the idea itself. *Alice*, 134 S. Ct. at 2353. As shown in MicroStrategy's opening brief and further below, the DataTern patent fails to satisfy the *Alice* criteria for patentability.

## A. The Claimed Steps Cover Abstract Ideas.

In its brief, DataTern concedes, as it must, that a person can perform the first two steps of the '502 patent's claims—"selecting an object model" and "generating a map…"—in his mind. Opp. at 17–18 (admitting "a human being could, theoretically, think of an object model" and "a human being could, theoretically, think of a map or draw one on paper"). DataTern only objects to the characterization of these steps as ***purely*** mental processes by noting that performing these steps in one's mind "would not serve the purpose of the invention" which requires "features that must exist within the computer," i.e., the runtime engine and interface objects. *Id.*

DataTern's argument only makes MicroStrategy's point. The '502 patent is just a computer implementation of mental processes (i.e. selecting an object model and mapping) carried out using conventional techniques. This is exactly the type of patent that the Supreme Court and the Federal Circuit have disapproved.[6]

## B. The Claimed Steps Are Not Inventive Because They Implicate Conventional Technology.

Having conceded that its claims implicate mental processes, DataTern tries to rescue the '502 patent by arguing the "runtime engine and interface objects can neither exist in one's mind nor on paper." (Opp. at 18–20.) But this argument misses the mark because an "interface object" and "runtime engine" are conventional, well-known computing components that cannot transform the claims' mental processes into patent eligible subject matter. *See Mayo*

---

[6] DataTern suggests that its claims are not directed to mental steps because those mental steps cannot "serve the purpose of the invention" until they exist on a computer. (Opp. at 18.) This misses the point. Cases invalidating computer-related claims under *Alice* all involve processes that benefit from computerization, and in many cases could only exist on a computer. For instance, in *Essociate*, the court found invalid a patent claiming the mental process of "receiving and tracking referrals." E*ssociate, Inc. v. Clickbooth.com, LLC*, 2015 WL 1428919 at *5 (C.D. Cal., Feb. 11, 2015). That the claims required computing constructs to carry out the mental processes did not save the *Essociate* patent. *Id.* Likewise, as discussed *supra*, the *Ultramercial* patent related to online content delivery, and likewise could only be implemented on computers.

*Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1300 (2012) ("[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable…."). The facts here demonstrate that these two components are conventional and in the prior art.

### 1.      Interface Objects Are Conventional Components Pre-Dating the Patent.

DataTern cannot escape the fact that interface objects are conventional components which were well-known in the prior art. (Opp. at 18–19.)

First, DataTern's own statements to another court confirms this point. (*Id*.) DataTern previously told the New York court that an interface object is just "an object by which the object oriented application accesses the relational database via a runtime engine." *Microsoft Corp. v. DataTern, Inc.*, 2012 WL 3682915, at *7 (S.D.N.Y. Aug. 24, 2012).[7] Yet, in its opposition in this case, DataTern tries to distinguish the Baker prior art reference by arguing that an "interface object" has additional characteristics, such as "maintaining information regarding the state of the data… and [being] capable of accessing the correct elements in the database." (Opp. at 18–19 (citing Cohen Decl. ¶ 72).) These characteristics appear nowhere in the ***claims***, nor did DataTern suggest they are requirements of an interface object during the New York proceedings. *See generally Microsoft*, 2012 WL 3682915.

---

[7] Notably, DataTern urged this same construction of "interface object" in ***both*** of its Federal Circuit appeals, seeking a broad reading for infringement purposes. Ex. C, DataTern's Opening Brief in Appeal No. 2013-1185 at 18-19 ("…'interface object' means 'an object by which the object oriented application accesses the relational database via a runtime engine."); *see id*. ("That is, the interface object serves as a go-between."); DataTern's Opening Brief in Appeal No. 2013-1251, -1252 at 8 (attached as Ex. K to MicroStrategy's Mot. for Summary Judgment of Non-Infringement, ECF No. 56-11 ("An 'Interface Object' means an 'object by which the object oriented application accesses the relational database via a runtime engine.'"); *see also* Opp. at 2 (describing "interface objects" as "go-betweens…to access data from the relational database.")

Moreover, DataTern's attempt to distinguish the Baker reference contradicts its own previous statements to this Court. When first faced with MicroStrategy's motion to dismiss under § 101 pre-*Alice*, DataTern **admitted** that Baker disclosed the use of "interface objects" to obtain data from databases: "[T]he PTO found the '502 patent novel over this prior art and patent eligible ***despite the '787 [Baker] patent's disclosure of using 'interface objects' to obtain data from databases***." (ECF No. 58 at 15) (emphasis added). DataTern's revisionist characterization of "interface objects" as being something other than what Baker discloses is plainly a litigation-driven argument devised to salvage an invalid patent, and should be disregarded.

Second, Baker still discloses an interface object even under DataTern's newly-formulated requirement that "interface object" must be able to access elements of a database. MicroStrategy demonstrated this point in its opening brief and, for brevity, respectfully refers the Court to that discussion. (Mot. at 9.)

Third, beyond the Baker reference, the '502 patent specification and DataTern's own declarant confirm that interface objects existed before the DataTern patent. '502 Patent, col. 1, lines 25–49; Cohen decl. at ¶ 39; Opp. at 8 ("There are other ways to bridge the object relational mismatch. The '502 patent details some prior art methods…."). Indeed, before the '502 patent, programmers who needed to interface object-oriented applications and relational databases would merely code the interface objects by hand to perform specific database queries from the object-oriented application. '502 Patent, col. 1, lines 25–49. Thus, "interface objects" as claimed in the '502 patent were conventional, and DataTern cannot run away from this fact.

### 2.    Runtime Engines Are Conventional Components Pre-Dating the Patent.

Like an interface object and contrary to DataTern's present arguments, a runtime engine is a conventional component that was already well-known in the prior art. (Opp. at 18–20.)

First, as with "interface object," DataTern's position in this case is inconsistent with its previous characterization of the term. DataTern repeatedly took a broad and generic position on the term for purposes of infringement, first telling the Eastern District of Texas that a runtime engine was a conventional computer function because it is only "a specific service or block of functionality that operates during runtime execution of the object-oriented software application." *DataTern v. Staples*, Case No. 2:10-cv-133-TJW-CE (ECF No. 170) at 24 (E.D. Tex. Jan. 20, 2012) (attached as Ex. B). DataTern then told the New York court that runtime engine meant "[s]oftware, which is not directly part of the object-oriented application, that the object-oriented application uses to access the relational database," or software to access a database. *Microsoft*, 2012 WL 3682915, at *9. More recently, DataTern urged the same broad, generic construction at the Federal Circuit. Ex. C at 15.

Second, leaving aside the inconsistencies in these two interpretations, the use of these components does not refer to new technology. They merely cover conventional prior art computer functions allowing an object-oriented application to access a relational database, as established in the patent's background and in DataTern's declaration. '502 Patent, col. 1, lines 25–49; Cohen Decl. ¶ 39. DataTern simply cannot plausibly assert that a "runtime engine" itself was novel technology in the late 1990's when this patent was filed.

> **3.     Use of Conventional Components Pre-Dating the Patent Does Not Make an Abstract Idea Patentable.**

According to DataTern, the use of the interface objects and runtime engine constitutes the required "inventive concept." (Opp. at 18–20.) Again, DataTern's own patent acknowledged that prior art systems in which an object-oriented application interfaced with a relational database could transform, read, and write data from a database, as does DataTern's declarant, Dr. Cohen. '502 Patent, col. 1, lines 25–49; Cohen Decl. ¶ 47. These concepts were thus entirely

conventional and DataTern's invention merely employed them post-solution to carry out the claimed abstract ideas—"selecting an object model" and "mapping."

Under *Alice* and its progeny, the patent does not satisfy § 101 and must fall. *Alice*, 134 S. Ct. at 2359 ("Thus, if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on ... a computer,' that addition cannot impart patent eligibility") (brackets and ellipsis in original); *Content Extraction*, 776 F.3d at 1348 ("There is no 'inventive concept' in CET's use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry."); *Ultramercial*, 772 F.3d at 715–16.

## IV.    No Presumption of Validity Applies.

Against this § 101 inquiry, DataTern invokes the presumption of validity. (Opp. at 8–9, 20.) The presumption does not save its patent.

It is questionable whether the presumption of validity even applies in a patent-eligibility inquiry. Indeed, DataTern has only cited an unpublished district court opinion that pre-dates the Supreme Court's *Alice* decision by four years. (Opp. at 9 (*citing Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 1:10 CV 1370, 2010 WL 4698576, *4-5 (N.D. Ohio Nov. 12, 2010).) While the Federal Circuit has not yet definitively addressed this issue after *Alice*, one circuit judge cast substantial doubt on the availability of the presumption in a § 101 inquiry by noting that the Supreme Court did not even consider the presumption of validity in *Alice, Mayo,* and *Bilski*. *Ultramercial*, 772 F.3d at 720–21 (Mayer, J., concurring) ("Although the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned—much less applied— any presumption of eligibility. The reasonable inference, therefore, is that while a presumption of validity attaches in many contexts…***no equivalent presumption of eligibility applies in the section 101 calculus***") (emphasis added, internal citation omitted).

Several recent district court decisions follow Judge Mayer's concurrence to hold that the "clear and convincing" evidence standard does not apply to a Section 101 challenge. *E.g.*, *Shortridge v. Found. Constr. Payroll Serv., LLC*, 2015 WL 1739256, at *7 (N.D. Cal. Apr. 14, 2015) ("the clear and convincing evidence standard is not applicable to the Motion"); *OpenTV, Inc. v. Apple, Inc.*, 2015 WL 1535328, at *3 (N.D. Cal. Apr. 6, 2015) (rejecting clear and convincing evidence standard and presumption of validity in Section 101 challenge); *Modern Telecom Sys. LLC v. Earthlink, Inc.*, 2015 WL 1239992, at *8 (C.D. Cal. Mar. 17, 2015) (same).

Even if the presumption of validity applied, patent eligibility is a question of law for the Court, *In re BRCA1*, 774 F.3d at 759 ("The ultimate question of patent eligibility under § 101 is an issue of law, reviewed de novo."), and DataTern does not explain how a heightened burden of proof changes the result here.

## V.      The Court Does Not Owe Any Deference to the USPTO.

### A.      The USPTO's § 101 Inquiry During Prosecution Occurred Under a Now-Rejected Standard.

DataTern cannot justify any special deference based on the USPTO's previous consideration of § 101 during patent prosecution. (Opp. at 20.) Not only has the Federal Circuit never deferred to the USPTO in § 101 challenges, but the USPTO's consideration of this issue occurred in 1999 when the now-defunct ruling in *State Street Bank & Trust Co. v. Signature Financial Group*, Inc., 149 F.3d 1368, 1373 (Fed Cir. 1998), still controlled. (ECF No. 75-4 at 5.) Since then, the Supreme Court's *Bilski-Mayo-Alice* decisions and Federal Circuit rulings have eviscerated *State Street*, and have significantly heightened the patentability standard. *See Ultramercial,* 772 F.3d at 720 (Mayer, J., concurring) ("[T]he Court has unequivocally repudiated the overly expansive approach to patent eligibility that followed in the wake of *State Street*"). Thus, overcoming a § 101 rejection under a far more permissive legal standard in 1999

13

does not justify any deference today. *Id.* ("Because the PTO has for many years applied an insufficiently rigorous subject matter eligibility standard, no presumption of eligibility should attach when assessing whether claims meet the demands of section 101.").

### B.   DataTern Mistakes Novelty for Patentability Under § 101.

DataTern also conflates patent *eligibility* under § 101 (i.e. whether the claims are directed to patentable subject matter) with the novelty under § 102 and obviousness inquiries under § 103, by arguing that the USPTO had found the '502 patent novel during prosecution and had considered the Baker reference during reexamination. (*E.g.,* Opp. at 6–7.) DataTern is wrong.

A claim's novelty has no bearing on *Alice* step one, which considers whether the claim comprises an abstract idea. *Ultramercial,* 772 F.3d at 715 ("In any event, any novelty in implementation of the idea is a factor to be considered *only* in the second step of the Alice analysis") (emphasis added).

Further, merely asserting the invention as a whole is novel—as DataTern does—cannot save a claim from unpatentability under § 101. This was the precise argument rejected in *Ultramercial*. There, the patentee argued the court should apply a novelty analysis of the entire claim when assessing patentability under § 101 and that "abstract ideas remain patent-eligible under § 101 as long as they are new ideas." *Id.* at 714. The Federal Circuit disagreed: "We do not agree with Ultramercial that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete." *Id.* at 715. Instead of adopting the patentee's conflation of §§ 101 and 102, the *Ultramercial* court properly applied the *Alice* two-step inquiry, by first identifying the abstract idea in the claims ("an advertisement as an exchange or currency") and then concluding that the remainder of the claim was nothing more than a conventional application of the abstract idea. *Id.* at 716 (ruling that the "additional steps

such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet" were conventional and well-understood).

As in *Ultramercial*, DataTern's patent claims cover an abstract idea (selecting an object model and mapping it to a database schema) that is implemented using conventional computing techniques (interface objects and a runtime engine). Whether that ***particular*** abstract idea was previously implemented with ***those*** conventional techniques would be a relevant inquiry under §§ 102 and 103 for prior-art invalidity, but that is not the correct question for § 101 patent-eligibility. DataTern has failed to show its claims pass the *Alice* test, for reasons set forth above.

## VI.    CONCLUSION

For the foregoing reasons, the Court should **GRANT** MicroStrategy's Motion for Summary Judgment of Invalidity for Unpatentable Subject Matter.


Dated: May 1, 2015                          /s/ Adam J. Kessel
                                            Adam J. Kessel (BBO #661,211)
                                            Fish & Richardson, P.C.
                                            One Marina Park Drive
                                            Boston, MA 02110-1878
                                            617-542-5070
                                            617-542-8906 (fax)

                                            Benjamin K. Thompson
                                            (admitted *pro hac vice*)
                                            bthompson@fr.com
                                            Fish & Richardson, P.C.
                                            1180 Peachtree St. NE
                                            Atlanta, GA 30318
                                            404-724-2844

                                            Attorneys for Defendant
                                            MICROSTRATEGY INCORPORATED.

## <u>CERTIFICATE OF SERVICE</u>

I certify that this REPLY BRIEF IN SUPPORT OF MICROSTRATEGY'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR UNPATENTABLE SUBJECT MATTER is being filed through the Court's electronic filing system on May 1, 2015, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

*/s/ Adam J. Kessel*
Adam J. Kessel