UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                           )
DATATERN, INC.                             )
                                           )
            Plaintiff                      )
                                           )   C.A. No. 11-cv-11970-FDS
       v.                                  )
                                           )   (Consolidated)
BLAZENT, INC., MICROSTRATEGY INC.,         )
*et al.*                                   )   LEAVE TO FILE GRANTED ON
                                           )   MAY 11, 2015
            Defendants                     )
_____)

**DATATERN'S SUR-REPLY FURTHER OPPOSING MICROSTRATEGY'S
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
FOR UNPATENTABLE SUBJECT MATTER**

After DataTern filed its opposition papers on April 16, but before MicroStrategy filed its reply on May 1, this Court denied a § 101 motion (at the pleading stage) because, *inter alia*, Defendants failed to show, by clear and convincing evidence, that the challenged claims would pre-empt the field or that the claimed steps are merely conventional. *Kenexa Brassring, Inc. v. HireAbility.com, LLC*, No. 12-10943, 2015 WL 1943826, at *7-8 (D. Mass. Apr. 28, 2015). This case, which MicroStrategy did not cite in its reply, supports DataTern's opposition, particularly because, in response to DataTern's counter-statement of facts, MicroStrategy now admits, or fails to dispute, that the claims of the '502 patent neither pre-empt the field nor recite merely conventional activity. Either fact satisfies the § 101 eligibility requirement.

**I.   MICROSTRATEGY ADMITS THAT THE '502 PATENT CLAIMS DO NOT PREEMPT THE FIELD**

The Supreme Court recognizes that a concern over pre-emption drives the § 101 analysis. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354-55 (2014). Patent claims that pose no real risk of pre-emption are typically eligible for patent protection under § 101. *Id*. This Court

recently held that whether patent claims pre-empt the field is a factual question. *Kenexa,* 2015 WL 1943826, at *7. MicroStrategy does not actually dispute that the claims of the '502 patent do not pre-empt the field. *See MicroStrategy's Response to DataTern's Local Rule 56.1 Counterstatement of Undisputed Material Facts Re Invalidity* [Dkt. No. 83] at Responses 55-58 (pp. 16-17 of Dkt. No. 83). For example, MicroStrategy does not dispute that "[t]here are other ways to bridge the object-relational mismatch." *Id.*, Response 55. MicroStrategy also does not dispute that "[t]he claims of the '502 patent do not preempt all methods of bridging the object-relational mismatch." As such, this fact is now admitted for purposes of this case. *See* LR 56.1. For at least this reason, the '502 patent is eligible under § 101.

## II. THE '502 PATENT DOES NOT CLAIM CONVENTIONAL ACTIVITY

Although MicroStrategy argues that using a runtime engine or interface objects is "conventional," it has failed to present ***clear and convincing evidence*** to support that point.[1] Indeed, MicroStrategy has failed to offer its own technical expert or any other evidence to rebut the testimony of DataTern's technical expert, Dr. Cohen, that, for example, the '502 patent claims a "new approach to the object-relational mismatch." Cohen Declaration [Dkt. No. 75] at ¶ 83. In particular, MicroStrategy admits that the '502 patent claims "***require a specific set of steps that was unconventional and innovative***":

---

[1] It is surprising that MicroStrategy argues that the clear and convincing evidence standard does not apply to § 101 challenges. *See* Reply [Dkt. No. 81] at 13. In seeking to protect its own patents from a § 101 challenge in another pending case, MicroStrategy argued the exact opposite. *See* **Exh. A**, *MicroStrategy's Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* at 6 ("Finally, in order to succeed on 35 U.S.C. § 101 grounds, Apttus must show, by **clear and convincing evidence**, that the Patents-in-Suit are directed to patent-ineligible subject matter") (emphasis added). That argument is consistent with this Court's holding in *Kenexa* denying a § 101 motion because the defendants had failed to offer clear and convincing evidence of its position. 2015 WL 1943826, at *7. *See also, e.g.*, *Ameritox, Ltd. v. Millennium Health, LLC*, No. 3:13-cv-00832, 2015 WL 1915043, at *3 (W.D. Wis. Apr. 24, 2015) (granting judgment as a matter of law that patent satisfied § 101 because "[a]t a minimum, defendant Millennium did not meet its burden of providing clear and convincing evidence to the contrary").

> 57.  The claims of the '502 patent do not preempt all methods of bridging the object-relational mismatch; instead, the '502 patent claims require a specific set of steps that was unconventional and innovative and that achieves better results. Cohen Decl. at ¶¶ 80, 83.
>
> **Response:**
>
> Undisputed for purposes of this motion, and not inconsistent with the relief requested in MicroStrategy's motion.

Dkt. No. 83 at p. 17. As such, regardless of whether the claims are directed to abstract ideas under *Alice*'s step one, they satisfy *Alice*'s step two because the claims recite something more than conventional activity. Claims that recite unconventional steps are patent eligible. *Kenexa*, 2015 WL 1943826, at *7.

Moreover, MicroStrategy has tried to confuse what "conventional" means in the § 101 context by, in effect, contradicting its own arguments. In its opening brief, MicroStrategy equated "conventional" with obviousness or novelty under 35 U.S.C. §§ 102 and 103 and argued that it is thus appropriate to consider prior art, such as the Baker prior art patent, to show that, for example, interface objects are conventional. *See* Dkt. No. 50 at 9 and fn. 7 ("It is appropriate to consider prior art in the context of deciding a § 101 motion") and at 16-17 and fn. 11 ("In determining whether a step is 'purely conventional or obvious,' it is appropriate to look to evidence (such as prior art) that might also be relevant to a validity analysis under 35 U.S.C. §§ 102 and 103").

In response to MicroStrategy's reliance on Baker, DataTern's expert, Dr. Cohen, distinguished Baker as not disclosing interface objects. *See* Cohen Declaration [Dkt. No. 75] at ¶¶ 67-70. Moreover, the USPTO twice found that using interface objects and a runtime engine are novel and distinguish the '502 patent from the prior art. *See* DataTern's LR 56.1 Counter-Statement of Material Facts [Dkt. No. 74] at ¶¶ 59-72.

MicroStrategy apparently had no answer to these facts and thus, in its reply brief, criticized DataTern for, in its view, conflating patent eligibility under § 101 with novelty under § 102. Dkt. No. 81 at 14. MicroStrategy cannot have it both ways. Either novelty and obviousness are relevant to whether a claim recites conventional or routine steps, as MicroStrategy initially argued in its opening brief, or they are not, as MicroStrategy now appears to argue in its reply. If conventional means old or obvious, then DataTern's unrebutted evidence of the inventiveness of interface objects and a runtime engine carries the day. If conventional means something else, then MicroStrategy has failed to offer any evidence supporting whatever that definition might be and, in any event, has now admitted that the steps are unconventional.[2]

### III.   THE CLAIMS DO NOT RECITE MENTAL STEPS

MicroStrategy argues in its reply that DataTern somehow conceded that "selecting an object model" and "generating a map" could be performed as mental steps. DataTern conceded no such thing: MicroStrategy has misread DataTern's argument. Indeed, in its opposition brief, under the bolded heading "**The Claimed Steps Are Not Mental Steps**," DataTern argued, "Nor are the claims merely a collection of mental steps, as MicroStrategy argues." Opposition Brief [Dkt. No. 72] at 17. DataTern further argued that, in the context of the '502 patent and the claims, "selecting an object model" and "generating a map" could not be understood at mental steps. *Id*. at 18. DataTern supported those arguments with Dr. Cohen's **unrebutted** testimony. *See* Cohen Declaration [Dkt. No. 75] at ¶¶ 49-53, 74, and 82.

---

[2] Even assuming for sake of argument that a runtime engine or interface objects were conventional, however, the Court must consider the claim as a whole. "A combination of conventional elements may be unconventional." *California Inst. of Tech. v. Hughes Commc'ns Inc.*, No. 2:13-CV-07245-MRP, 2014 WL 5661290, at *14 (C.D. Cal. Nov. 3, 2014) (citing *Diamond v. Diehr*, 450 U.S. 175, 188 (1981) ("a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made"). MicroStrategy has offered no evidence that the **combination** of steps, as opposed to individual elements, is conventional.

What MicroStrategy mistakes for an admission is actually what is known as rhetoric. What DataTern actually wrote, and what MicroStrategy mischaracterizes as an admission, is as follows: "While a human being could, theoretically, think of a map or draw one on paper, this mental map would not serve the purpose of the claimed methods and systems." Dkt. No. 72 at 18. That is not an admission. The point was to highlight the absurdity of MicroStrategy's argument that selecting an object model or generating a map could be purely mental steps. Mental object models, maps, runtime engines, and interface objects are not part of the solution claimed in the '502 patent. *See* Cohen Declaration at ¶¶ 51-52, 74.[3]

Finally, MicroStrategy now effectively admits that the recited steps are not purely mental: "MicroStategy agrees that all steps in the '502 patent claims cannot be performed purely with a pencil and paper." Dkt. No. 83, Response to Fact # 52 (at pp. 15-16). MicroStrategy further "agrees that a person could not draw a runtime engine or interface object on a sheet of paper that would actually be functional." Dkt. No. 83, Response to Fact # 45 (pp. 13-14). MicroStrategy has not offered any expert testimony to prove, by clear and convincing evidence, that the recited steps are mental activity, while DataTern's technical expert, Dr. Cohen has opined to the contrary. *See* Cohen Declaration [Dkt. No. 75] at ¶¶ 50-53, 74, and 82. Especially on a motion for summary judgment in which DataTern is the opposing party, the unopposed testimony of DataTern's expert must be credited and is alone enough to undermine

---

[3] Even if, for the sake of argument, some steps of the '502 patent claims were purely mental (which DataTern disputes), that alone would not sink the claims. "The Federal Circuit itself has recognized that a combination of mental and non-mental steps is patentable and that the crux of the analysis should be whether the mental steps impede 'basic tools of scientific and technological work.'" *California Inst. of Tech. v. Hughes Commc'ns Inc.*, No. 2:13-CV-07245-MRP, 2014 WL 5661290, at *16 (C.D. Cal. Nov. 3, 2014), *citing CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011).

MicroStrategy's motion.  *See France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-CV-04967, 2014 WL 1478850 (N.D. Cal. Apr. 14, 2014).

## IV.     MICROSTRATEGY ADMITS OTHER FACTS THAT DEFEATS ITS MOTION

In another opinion issued after DataTern filed its opposition, *Mobile-Plan-It LLC v. Facebook Inc.*, No. 14-cv-01709, 2015 WL 1801425, at *3 (N.D. Cal. Apr. 20, 2015), the court denied judgment on the pleadings because the claimed method is not merely a computerized method of organizing human activity or performing some brick-and-mortar commercial practice, but rather solves a problem "that arises in a specific technological context" and is thus patent eligible.  That is the point that DataTern makes and that MicroStrategy does not dispute.  In particular, MicroStrategy did not dispute the following facts:

- "The '502 patent is directed to methods and systems that allow object-oriented applications to access data in relational databases." Dkt. No. 83, Response to Fact # 34 (p. 10).

- "The patented invention 'is generally related to database technology, and more particular to interfacing object oriented software applications with relational databases." Dkt. No. 83, Response to Fact # 35 (p. 10).

- "The claimed inventions of the '502 patent improve computer software technology by offering a solution to the object-relational mismatch." Dkt. No. 83, Response to Fact # 36 (p. 10).

- "Prior to the existence of computers, there was no reason to solve the problem of the object-relational mismatch because object-oriented application and relational databases did not exist." Dkt. No. 83, Response to Fact # 48 (pp. 14-15).

- "The invention does not improve a human activity or fundamental business practice but rather offers a new approach to the object-relational mismatch." Dkt. No. 83, Response to Fact # 49 (p. 15).  Indeed, MicroStrategy "agrees that the '502 patent is not directed to a fundamental business practice." *Id.*

- "The '502 patent claims a technical solution to a technical problem in the computer software industry." Dkt. No. 83, Response to Fact # 50 (p. 15).

6

MicroStrategy has likewise now admitted--contrary to its initial argument (see Dkt. 50 at, *e.g.*, pp. 1 and 15-16)--that the claims cannot be distilled down to just a mapping of relationships between the object model and database schema.  MicroStrategy has failed to dispute DataTern's Fact # 51, which states that "The solution claimed in the '502 patent is not merely a "mapping;" the claims recited several steps, including using a runtime engine and interface objects."  Rather than dispute this fact, MicroStrategy agreed "that the '502 patent claims include several steps including those requiring a mapping, runtime engine, and interface objects."  Dkt. No. 83, Response to Fact # 51 (p. 15).  Accordingly, MicroStrategy cannot argue that the '502 patent is drawn to an abstract idea.

## CONCLUSION

For the foregoing reasons, DataTern respectfully requests that this Court deny MicroStrategy's motion for summary judgment regarding invalidity under 35 U.S.C. § 101.

DATATERN, INC.
By its Attorneys:

 /s/  Erik Paul Belt
William A. Zucker (BBO# 541240)
Lee Carl Bromberg (BBO# 058480)
Erik Paul Belt (BBO# 558620)
Kia L. Freeman (BBO# 643467)
Keith Toms (BBO# 663369)
McCARTER & ENGLISH, LLP
265 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 449-6500
Fax: (617) 607-9200
Email: wzucker@mccarter.com
Email: lbromberg@mccarter.com
Email: ebelt@mccarter.com
Email: kfreeman@mccarter.com
Email: ktoms@mccarter.com

May 11, 2015

## CERTIFICATE OF SERVICE

I, Erik Paul Belt, certify that on May 11, 2015, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

>*/s/ Erik Paul Belt*
>Erik Paul Belt