**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **DATATERN, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MICROSTRATEGY, INC.; EPICOR SOFTWARE CORPORATION; CARL WARREN & CO., INC.; LANCET SOFTWARE DEVELOPMENT, INC.; TERADATA CORPORATION; PREMIER, INC.; and AIRLINES REPORTING CORPORATION,**<br><br>**Defendants.** | ) | **Civil Action Nos.**<br>**11-11970-FDS**<br>**11-12220-FDS** |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO REQUIRE PLAINTIFF TO POST A BOND**

**SAYLOR, J.**

This is a patent dispute concerning a claimed method for facilitating the interaction between software and computerized databases. The claimed patent, U.S. Patent No. 6,101,502, recites "[a] method for interfacing an object oriented software application with a relational database." '502 patent claim 1. Plaintiff DataTern, Inc., asserts patent infringement on the part of defendant MicroStrategy, Inc., and a number of its customers.

The case was remanded from the Federal Circuit after a prior entry of judgment for defendants. That judgment was based on a stipulation by DataTern that it could not prove infringement if the Court adopted the claim construction of a particular term ("to create at least one interface object") that had been determined by the United States District Court for the Southern District of New York in a separate case involving the '502 patent. Because the Court

adopted that construction, it entered a judgment of non-infringement in favor of all defendants. On December 19, 2014, the Federal Circuit vacated the judgment, finding that the claim construction of the New York court had been incorrect. MicroStrategy then filed two separate motions for summary judgment, one based on invalidity for non-patentable subject matter, and another based on non-infringement. The Court denied both motions in September 2015.

In expectation of prevailing on the merits and collecting its fees pursuant to 35 U.S.C. § 285, MicroStrategy has moved to require DataTern to post a bond to preemptively cover its costs and fees. For the following reasons, the motion will be denied.

## I. <u>Background</u>

### A. <u>Factual Background</u>

The Federal Circuit has described the ’502 patent as follows:

> The ’502 patent is directed to interfacing an object oriented software application to access data stored in a relational database. ’502 patent col. 1 ll. 22-24, 53-55. An object oriented application cannot easily interface with a relational database because of the structural differences between the objects in the application and the tables in the database. *Id.* col. 1 ll. 25-49. To solve this problem, the ’502 patent discloses creating “interface objects” that act as intermediaries between the object oriented application and the relational database. *Id.* col. 2 ll. 34-38. The patent discloses selecting an “object model,” generating a map between the database schema and the object model, and creating the interface object using the map. *Id.* col. 2 ll. 28-34, 40-44. A “runtime engine” accesses data in the relational database using the interface object. *Id.* col. 2 ll. 34-38, Fig. 1.

*DataTern, Inc. v. Epicor Software Corp.*, 599 F. App’x 948, 950 (2014).

Claim 1 of the ’502 patent is representative and reads as follows:

> A method for interfacing an object oriented software application with a relational database, comprising the steps of
>
> > selecting an object model;
> >
> > generating a map of at least some relationships between schema in the database and the selected object model;

> employing the map to create at least one interface object associated with an object corresponding to a class associated with the object oriented software application; and
>
> utilizing a runtime engine which invokes said at least one interface object with the object oriented application to access data from the relational database.

’502 patent claim 1.

DataTern alleges infringement of the ’502 patent by MicroStrategy’s Business Intelligence Platform (“Business Platform”). Broadly, the Business Platform “facilitates the analysis of large volumes of data by providing the ability to view the data from intuitive perspectives, such as in custom summary reports.” (Def. SMF II ¶ 51). The Business Platform utilizes something called a “Logical Data Model” to organize data. (*Id.* ¶ 53). DataTern has alleged that the Logical Data Model constitutes an infringing object model.

**B. <u>Procedural Background</u>**

On November 7, 2011, DataTern filed a complaint against Blazent, Inc., a customer of MicroStrategy, alleging infringement of the ’502 patent. Shortly thereafter, between November 15 and December 14, 2011, it filed similar complaints against eight other MicroStrategy customers and MicroStrategy itself.[1]

On February 24, 2012, this Court (Stearns, J.) entered an order consolidating the latter nine cases and designating case No. 11-cv-12220, that against MicroStrategy, as the lead case. At that time, the case with Blazent as the defendant was not yet consolidated.

On May 10, 2012, MicroStrategy moved for judgment on the pleadings on the basis of invalidity. The Court (Stearns, J.) denied the motion without prejudice on July 31, 2012.

[1] Between November 7 and November 15, 2011, DataTern filed seventeen lawsuits in this Court alleging infringement of the ’502 patent. (SMF II ¶ 1). The lawsuit against Blazent was the first filed.

During the same period of time, DataTern was involved in two consolidated declaratory-judgment actions in the United States District Court for the Southern District of New York, captioned *Microsoft Corporation v. DataTern, Inc.* (11-cv-02365-KBF), and *SAP AG and SAP of America v. DataTern, Inc*., (11-cv-02648-KBF). On August 24, 2012, the New York court issued an order on claim construction in which it construed the terms "object model" and "to create at least one interface object," among others, in the '502 patent. It construed the term "object model" to mean "a template with a predetermined standardized structure both relating to an object-oriented software application and including object classes and inheritance relationships among classes." *Microsoft Corp. v. DataTern, Inc.*, Nos. 11-cv-02365, 11-cv-02648, 2012 WL 3682915, at *14 (S.D.N.Y. Aug. 24, 2012) ("*Microsoft I*"). It construed the term "to create at least one interface object" to mean "to generate code for at least one class and instantiate an object from that class, where the object is not part of or generated by the object oriented application and is used to access the database." *Id.* On December 26, 2012, the New York court issued a final judgment in the consolidated cases before it.

DataTern then conceded in this Court that if the New York court had correctly construed the term "to create at least one interface object," the accused MicroStrategy product could not be held to infringe the '502 patent. Specifically, under that construction, the accused product here would not meet the claim limitation to "create at least one interface object" because it does not "generate code for at least one class and instantiate an object from that class."

On January 4, 2013, the Court granted a motion by DataTern to consolidate the cases before it; at that point, case number 11-cv-11970-FDS became the lead case in these matters.

On January 24, 2013, DataTern appealed the judgment of the New York court to the Federal Circuit.

On February 7, 2013, based on the concession by DataTern that MicroStrategy could not be held to have infringed the '502 patent based on the New York court's construction of "create at least one interface object," this Court granted summary judgment to MicroStrategy. (Docket No. 108). DataTern appealed that order to the Federal Circuit on March 5, 2013.

On May 5, 2014, the Federal Circuit issued an opinion in which it upheld the New York court's judgment of non-infringement on the part of the plaintiffs in that case; in so doing, it upheld the district court's construction that "object model" included classes. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 909 (Fed. Cir. 2014) (*"Microsoft II"*).[2] The court did not review the district court's construction of "to create at least one interface object," as that proved unnecessary to render its decision.

On December 19, 2014, the Federal Circuit vacated this Court's order of summary judgment, finding that the New York court's construction of "to create at least one interface object" had been incorrect. *DataTern, Inc. v. Epicor Software Corp.*, 599 F. App'x 948, 949 (Fed. Cir. 2014). It construed the term "to create at least one interface object" as "to instantiate at least one interface object from a class." *Id.* at 951. As a result, it remanded the case to this Court for further proceedings.

On February 11, 2015, MicroStrategy filed two separate motions for summary judgment—one on the basis of invalidity for non-patentable subject matter and the other on the basis of non-infringement. The Court denied both motions. As to the first motion, the Court held that MicroStrategy had not demonstrated by clear and convincing evidence that the subject matter of the '502 patent was an abstract idea ineligible for patent protection under 35 U.S.C.

[2] The court initially issued its opinion on April 4, 2014, but issued a corrected version (vacating the original opinion) on May 5, 2014. The corrected version did not alter the court's analysis with respect to the term "object model."

§ 101. As to the second motion, although the Court found that DataTern's position on the term "class" in the earlier litigations differed from its position in the present litigation, the Court concluded that it was premature to rule on MicroStrategy's claim construction and judicial estoppel arguments:

> Based on that evidence alone, however, the Court is not prepared to accept MicroStrategy's proposed definition of the term "class." The parties have not undergone claim construction in this proceeding and there has been only minimal briefing on the proper construction of the term "class." Although the current record evidence may well support the construction proposed by MicroStrategy, it would be more prudent to defer constructing the term at this stage and under these circumstances.
>
> . . .
>
> Although the inconsistency is obviously troublesome, rather than address the issue at this stage, the Court will instead defer its consideration. MicroStrategy appears to have raised the issue of the binding stipulation for the first time in its reply memorandum, and did little, if anything, to develop the estoppel argument. Under the circumstances, the Court will not grant summary judgment on the basis of judicial estoppel without, at a minimum, additional briefing from the parties. The Court will therefore deny the motion for summary judgment on the issues of (1) whether the term "class" should be construed as "a definition that specifies attributes and behavior of objects, and from which objects can be instantiated" and (2) whether the doctrine of judicial estoppel, or any other equitable doctrine, precludes DataTern from asserting an inconsistent position in this litigation. That denial is without prejudice to the ability of defendants to raise either or both issues in the future and on an appropriate record.

(September 4, 2015 Order at 21-22). Five months after that ruling, MicroStrategy filed the present motion seeking to require DataTern to post a $2.25 million bond in order to proceed in prosecuting the case. The parties have not yet undergone claim construction in this proceeding as to the term "class."

## II. <u>Legal Standard</u>

The Federal Rules of Civil Procedure do not address a plaintiff's obligations to post a bond for costs and expenses before proceeding with an action. Accordingly, absent a local rule

or state statute expressly requiring the posting of security, "the federal district courts have inherent power to require plaintiffs to post security for costs." *Simulnet East Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 572, 574 (9th Cir. 1994); *see also Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 143 (1st Cir. 1976) (noting that it is within a court's inherent power to require a plaintiff to post security "when warranted by the circumstances of the case"); *McClure v. Borne Chem. Co.*, 292 F.2d 824, 835 (3d Cir. 1961) ("There are certain exceptional cases in which [a court] has inherent power to require security for costs.").[3] The District of Massachusetts does not have a local rule governing posting security for costs and expenses, nor does MicroStrategy cite a state statute governing the issue. Accordingly, MicroStrategy's motion to require DataTern to post a bond is a matter for the Court's discretion.

## III. <u>Analysis</u>

"In order to avoid depriving a plaintiff of access to the courts by a security bond requirement, the courts in some cases must strike a delicate balance." *Simulnet*, 37 F.3d at 576. The First Circuit, in addressing a case on appeal from the District of Puerto Rico, which has a local rule addressing security bonds, stated that courts must balance

> (i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective. And just as factors such as the absence of attachable property within the district or the conduct of the parties may bear on a defendant's legitimate need for the prophylaxis of a bond, so too, a plaintiff's ability to post surety for costs must weigh in the balance when the third figure of the equation is tabulated. While it is neither unjust nor unreasonable to expect a suitor "to put his money where his mouth is," *cf. In re Stump*, 449 F.2d 1297, 1298 (1st Cir. 1971) (per curiam), toll-booths cannot be placed across the courthouse doors in a haphazard fashion. The district court, in the exercise of its sound discretion, must settle upon an assurance which is fair in the light not only of the case itself and of

[3] Some courts have adopted local rules addressing the issue. *See, e.g.*, S.D.N.Y. Civ. R. 54.2 ("The [c]ourt, on motion or on its own initiative, may order any party to file an original bond for costs . . . ."); E.D. Pa. Civ. R. 54.1(a) (providing that the court may order security for costs for a non-resident plaintiff).

> the exigencies faced by the defendant, but also fair when illuminated by the actual financial situation of the plaintiff.

*Aggarwal v. Ponce Sch. of Med.*, 745 F.2d 723, 727-28 (1st Cir. 1984) (footnote omitted). Other courts have applied similar balancing tests that require weighing the following factors:

> (1) the financial condition and ability to pay of the party who would post the bond; (2) whether that party is a non-resident or foreign corporation; (3) the merits of the underlying claims; (4) the extent and scope of discovery; (5) the legal costs expected to be incurred; and (6) compliance with past court orders.

*RLS Assocs., LLC v. United Bank of Kuwait, PLC*, 2005 WL 578917, at *1 (S.D.N.Y. March 11, 2005) (citation omitted).

Here, MicroStrategy contends that DataTern should be required to post a bond for two principal reasons. First, it contends that DataTern's only assets are its patents, which are encumbered by more senior creditors. Thus, according to MicroStrategy, without a bond "it is virtually certain that DataTern will not pay the [future costs and fees] otherwise." (Def. Mem. 8-10). It also points to DataTern's failure to pay its own damages experts in the New York patent case. Second, MicroStrategy contends that it has a strong non-infringement case on the merits. Specifically, it points to DataTern's inconsistent interpretation of the term "class," and the possibility that it may be judicially estopped from changing the interpretation that it stipulated to during the New York litigation.

DataTern contends that an order requiring it to post a bond, which should only be granted in "certain exceptional circumstances," is premature here because the parties have not engaged in claim construction, and because "speculation as to the probability of a lawsuit's success—and a plaintiff's equally speculative resulting financial obligations—is not sufficient grounds to require posting of a bond." (Pl. Mem. 4) (quoting *Live Face on Web, LLC v. Emerson Cleaners, Inc.*, 2014 WL 2805040, at *3 (D.N.J. June 20, 2014)). It also contends that the request for a bond is

even weaker here—in a patent case—because the fee-shifting provision of 35 U.S.C. § 285 is triggered only in "exceptional" cases that "stand[ ] out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Finally, DataTern asserts that requiring it to post a $2.25 million bond would "effectively foreclose litigation funding and prevent [it] from litigating th[e] case." (Pl. Mem. 5).

After consideration of the relevant factors, the Court cannot conclude that the present case is sufficiently "exceptional" to warrant a bond. *McClure*, 292 F.2d at 835. Little has changed since the Court denied summary judgment in September 2015: the parties still have not begun claim construction and the judicial estoppel argument on the term "class" remains undeveloped. Accordingly, on the present record, the Court will defer making a determination—even a preliminary one—on the merits of DataTern's infringement claim. It will therefore deny the motion without prejudice to its renewal at a later time.

**IV. Conclusion**

For the foregoing reasons, MicroStrategy's motion for DataTern to post a bond is DENIED without prejudice to its renewal.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: March 9, 2016